```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION


SANDERSON FARMS, INC.                           PLAINTIFF

VS.                       CIVIL ACTION NO. 3:02-cv-1800(DCB)(JCS)

SAMS MANAGEMENT GROUP, INC.,
ANDREW B. SAMS, J. BRANT TURNER,
GREG PRICE, AND TY SAMS                          DEFENDANTS
```

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiff's motion to dismiss defendants J. Brant Turner, Greg Price, and Ty Sams **(docket entry 301);** the defendants' motion for summary judgment **(docket entry 303);** the plaintiff's motion for summary judgment **(docket entry 305);** and the plaintiff's amended motion for summary judgment **(docket entry 313).** Having carefully considered the motions and responses, the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

Federal Rule of Civil Procedure 41(a)(2) provides the standard for the plaintiff's motion for voluntary dismissal: "[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper ... . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." A district court's grant or denial of a voluntary dismissal, and any conditions attached thereto, is reviewed under an abuse of discretion standard. <u>Elbaor v. Tripath Imaging, Inc.</u>, 279 F.3d 314, 318 (5th

Cir. 2002).  The Fifth Circuit has held that "motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  Elbaor v. Tripath Imaging, Inc., 279 F.3d 314, 317 (5th Cir. 2002).  Plain legal prejudice occurs where the grant of a motion for voluntary dismissal causes the nonmovant to be stripped of an otherwise available defense.  Id. at 318-19.  The individual defendants do not show that dismissal without prejudice would strip them of an otherwise available defense.

Plain legal prejudice can also exist regarding the timing of a motion for voluntary dismissal.  Filing a motion for voluntary dismissal at a late stage in the litigation can be grounds for denying the motion.  See, e.g., Manshack v. Southwestern Elec. Power Co., 915 F.2d 172, 174 (5th Cir. 1990)("In some circumstances we would probably agree that a voluntary dismissal granted after an adverse trial court ruling could inflict 'legal prejudice' on the defendant."); Davis v. Huskipower Outdoor Equip. Corp., 936 F.2d 193, 199 (5th Cir. 1991)("When a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort, then a court may, in its discretion, refuse to grant a voluntary dismissal.").

Here, the plaintiff seeks voluntary dismissal of all claims against three of the individual defendants without prejudice.  The three individual defendants argue that the dismissal should be with prejudice, arguing that the plaintiff's motion was filed on the eve

of the defendants' motion for summary judgment, and that the plaintiff "knew that it could not withstand summary judgment on the claims against the three individual defendants." (Defendants' Response, p. 3). The Court shall therefore address the defendants' motion for summary judgment before proceeding with the plaintiff's motion for voluntary dismissal.

The controversy in this case originated with a Poultry Consignment Agreement entered into by Sanderson Farms, Inc. ("Sanderson Farms") and Sams Management Group, Inc. ("Sams Management") on January 1, 2002. By the terms of this agreement, Sams would contract with one of its Russian or Eastern European customers for the sale of poultry which would be purchased on consignment from Sanderson Farms by Sams Management. (Poultry Consignment Agreement, January 1, 2002). In July of 2002, Sanderson Farms became concerned about Sams Management's past due accounts, and re-negotiated with Sams Management for direct payment from Sams Management's customers to Sanderson Farms. Additionally, Sams Management was to provide Sanderson Farms with additional security in the form of mortgages, which it did in August of 2002.

In September of 2002, Sams Management chartered the m/v Minnesota to transport Sanderson Farms poultry to its customer, Euroservice, in Russia. On October 14, 2002, Sams Management sent an invoice to Euroservice directing Euroservice to make payments to Sanderson Farms. (Invoice #311, October 14, 2002). According to Sams Management, Euroservice requested that the invoice be reissued

with instructions to pay Sams Management instead of Sanderson Farms, and this was done on October 15, 2002. (Deposition of Andy Sams, p. 221). On October 17, 2002, the invoice was revised again by Sams Management, changing the loading date from October 18, 2002, to October 25, 2002. This invoice instructed Euroservice to wire its October 18, 2002, payment to Sanderson Farms. (Invoice #311, October 17, 2002). On or about October 18, 2002, Sanderson Farms demanded that Sams Management's charter party agreement on the m/v Minnesota be changed to name Sanderson Farms as charterer of the m/v Minnesota. This was accomplished by an Addendum to the Charter Party Agreement on October 18, 2002. On October 22, 2002, another preliminary invoice for Sanderson Farms product was sent to Euroservice by Sams Management, which instructed Euroservice to wire payments to Sanderson Farms. (Invoice #310, October 22, 2002). The m/v Minnesota departed New Orleans, Louisiana, on October 26, 2002. On October 28, 2002, invoices #311 and #310 were merged into a final invoice as Invoice #310, which also instructed Euroservice to wire payment to Sanderson Farms. (Invoice #310, October 28, 2002).

On November 5, 2002, Sams Management notified Sanderson Farms that its lender, Arvest Bank, would not agree to the terms of the new agreement between Sanderson Farms and Sams Management, and that it could therefore not honor the new terms. (Email from Andy Sams to Herbie Hoover of Sanderson Farms, November 5, 2002). This was unacceptable to Sanderson Farms. (Email from Herbie Hoover to Andy

Sims, November 6, 2002).   At Sanderson Farms' request, Sams Management had Euroservice send a letter to Sanderson Farms stating that payment would be made for the product on the m/v Minnesota. (Email from Euroservice to Herbie Hoover, November 6, 2002). According to Sams Management, Herbie Hoover contacted Andy Sams and insisted that the letter be changed to state that payment would be made directly to Sanderson Farms by Euroservice. (Deposition of Andy Sams, p. 270).   Andy Sams states that he was authorized by Euroservice to make the change, and that he did so. (Deposition of Andy Sams, p. 277).

On November 7, 2002, Sanderson Farms sent a letter to Euroservice demanding that payments for the product on the m/v Minnesota be sent to Sanderson Farms' account. (Letter from Herbie Hoover to Euroservice, November 7, 2002). Andy Sams states that on November 7, 2002, Arvest Bank informed him that proceeds from the sale of the product on board the m/v Minnesota had to come through the bank, since Arvest had a security interest in Sams Management's accounts receivable. (Deposition of Andy Sams, pp. 303-04). Sams Management demanded that Euroservice wire all payments to Sams Management's account.   (Fax Letter from Sams Management to Euroservice, November 10, 2002).   Attached to this letter was a copy of final invoice #310 which instructed that all payments were to be made to Sams Management, not Sanderson Farms. According to Andy Sams, he informed Herbie Hoover before November 12, 2002, that Arvest Bank required the payments to go through Sams Management's

account.

On November 13, 2002, the m/v Minnesota arrived at the "St. Petersburg Roads" (the boundary between Russian and neutral waters). Also on November 13, representatives of Sanderson Farms and Sams Management met in Laurel, Mississippi, and the fact that Euroservice had sent the payment to Sams Management, not Sanderson Farms, was discussed. Sanderson Farms subsequently notified Euroservice that it owed a balance of $1,728,447.00 to Sanderson Farms. (Letter from Herbie Hoover to Euroservice, November 14, 2002). Sams Management states that it attempted to transfer $522,751.96 of the money it had received from Euroservice to Sanderson Farms on November 15, 2002 (Deposition of Andy Sams, p. 337), but that Arvest Bank would not authorize the transfer. (Deposition of Lampkin Butts, p. 93). By letter, Sanderson Farms notified Sams Management that it had a continuing obligation in an amount not less than $1,444,145.45 more than 60 days past due. The letter also notified Sams Management that Sanderson Farms considered the Poultry Consignment Agreement of January 1, 2002, terminated as a result of Sams Management's failure to make payment when due under Section 9 of the Agreement. (Letter from Mike Cockrell to Sams Management, November 15, 2002).

The m/v Minnesota entered Russian waters on November 24, 2002, due to mechanical problems with a boiler. Sanderson Farms had instructed the vessel to return to neutral waters after the repairs were made. (Deposition of Herbie Hoover, v. 2, p. 13). However,

the vessel was not allowed to return to neutral waters by the Russian authorities.  It is not clear from the parties' submissions what ultimately happened to the poultry.

On December 18, 2002, Sanderson Farms filed suit against Sams Management and four individual defendants seeking the approximately $1.4 million Sams Management owed it as of July 2002 (less the $750,000 letter of credit paid by Arvest Bank), $700,000 in damages for wrongful conversion in connection with the m/v Minnesota shipment, and consequential damages of $257,564.60.  Sanderson Farms also seeks a declaratory judgment that the Poultry Consignment Agreement was cancelled on November 18, 2002, and that the mortgages from Sams Management to Sanderson Farms are enforceable.  Sams Management filed an answer and counterclaim. All parties move for summary judgment.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of establishing the absence of genuine issues of material fact.  Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).  Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is

inappropriate.  Id.  The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial.  Fed.R.Civ.P. 56(e); Fields v. South Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  If the nonmovant satisfies its burden, summary judgment will not be granted.  Id.

Sams Management contends that it is entitled to summary judgment on the plaintiff's fraud claim.  The Court finds that there are genuine issues of material fact concerning the July 2002 modification of the Poultry Consignment Agreement.  There are also genuine issues of material fact regarding whether Sams Management's representations to Sanderson Farms were false or intended to deceive, and whether Sanderson Farms detrimentally relied on the representations.  As for the tortious interference with contract claim, Sanderson Farms claims that it was a third party beneficiary of the contract between Sams Management and Euroservice, and has the right as the seller of the goods to performance of the contract.  This issue is directly related to the fact issue concerning the modification of the Poultry Consignment Agreement.

Sams Management contends that its mortgages are not enforceable because by their terms they terminated upon cancellation of the Poultry Consignment Agreement.  Sanderson Farms contends that the Agreement was terminated solely because of

nonpayment by Sams Management, the circumstance from which the mortgages were intended to protect Sanderson Farms, and that Sams Management cannot be allowed to profit from its own misconduct. This is also an issue which requires determinations of fact by the Court.

Sanderson Farms also moves for summary judgment on the following counterclaims filed by Sams Management: breach of contract, tortious interference with business relations, injurious falsehood/trade libel, and breach of fiduciary duty. Because these claims are dependent on the factual findings regarding Sanderson Farms' claims, summary judgment is not appropriate.

Having found that neither the plaintiff's nor the defendants' motions for summary judgment are well taken, the Court cannot find that the plaintiff's motion for voluntary dismissal was simply an attempt to avoid summary judgment. The plaintiff's motion for voluntary dismissal without prejudice shall therefore be granted. Accordingly,

IT IS HEREBY ORDERED that the plaintiff's motion to dismiss defendants J. Brant Turner, Greg Price, and Ty Sams **(docket entry 301)** is GRANTED, and said defendants are hereby dismissed from this action without prejudice;

FURTHER ORDERED that the defendants' motion for summary judgment **(docket entry 303)** is DENIED;

FURTHER ORDERED that the plaintiff's motion for summary

judgment **(docket entry 305)** is MOOT;

FURTHER ORDERED that the plaintiff's amended motion for summary judgment **(docket entry 313)** is DENIED.

SO ORDERED, this the 2nd day of December, 2005.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE

10